## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**NILDA RODRÍGUEZ-LÓPEZ**,

      Plaintiff,

      v.

                                            Civil No. 14-1498 (BJM)

**TRIPLE-S VIDA, INC.**,

      Defendant.

## OPINION AND ORDER

Before the court are cross motions for summary judgment filed by plaintiff Nilda Rodríguez-López ("Rodríguez") and defendant Triple-S Vida, Inc. ("Triple-S") as to Rodríguez's claim under § 502 of the Employee Retirement Income Security Act ("ERISA"[1]), 29 U.S.C. § 1132.  Docket No. 46, "Def. Mot."; Docket No. 48, "Pl. Mot." The parties filed respective motions in opposition and replies.  Docket Nos. 58, 60, 62, 65.  For the reasons that follow, defendant's motion is **granted** and plaintiff's motion is **denied**.

## STANDARD OF REVIEW

ERISA promotes the interests of employees and their beneficiaries in employee benefit plans, and protects contractually defined benefits.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989).  Under ERISA, a participant or beneficiary may bring a civil action to recover benefits due to her or enforce her rights under the terms of the benefits plan.  29 U.S.C. § 1132(a)(1)(B).  The default standard for reviewing benefits decisions is de novo, and only is displaced if the benefit plan grants discretionary authority to an administrator or fiduciary to determine benefits eligibility.  *Gross v. Sun Life Assur. Co. of Can.*, 734 F.3d 1, 11 (1st Cir. 2013).  "If the plan affords such

---

[1] 29 U.S.C. §1001 *et seq.*

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

2

discretion, the court applies a deferential arbitrary and capricious or abuse of discretion standard." *Id.*, at 11 (*quoting Maher v. Mass. Gen. Hosp. Long Term Disability Plan*, 665 F.3d 289, 291) (internal quotations omitted). "This respectful standard requires deference to the findings of the plan administrator, and, thus, even under Fed. R. Civ. P. 56, does not permit a district court independently to weigh the proof." *Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir. 2002). "[T]he threshold question in determining the standard of review is whether the provisions of the benefit plan at issue 'reflect a <u>clear</u> grant of discretionary authority to determine eligibility for benefits.'" *Gross*, 734 F.3d at 13 (*quoting Leahy v. Raytheon Co.*, 315 F.3d 11, 15 (1st Cir. 2002)) (emphasis in original).

Here, the parties agree that the insurance plan at issue in this case granted discretionary authority to an administrator to determine eligibility of plan benefits and apply its provisions, but they differ as to whom had that authority.  Pl. Mot. p. 13-16; Def. Mot. p. 2, 12-13; Docket No. 47, Defendant's Statement of Facts ("Def. St.") ¶ 5; Docket No. 49, Plaintiff's Statement of Facts ("Pl. St.") ¶¶ 44-46; Docket No. 61, Defendant's Opposition to Statement of Facts ("Def. Opp.") ¶¶ 44-46.  In this case, the determination to deny Rodríguez plan benefits was made and notified by Triple-S.  Rodríguez denies that Triple-S had authority to determine eligibility, and claims that her employer, Mova Pharmaceutical Corporation ("Mova"), and not Triple-S, was the insurance plan administrator, sponsor, and policyholder, and thus the only one authorized to perform eligibility determinations, while Triple-S made the corresponding payments.  Pl. St. ¶¶ 44-46.  Triple-S asserts that it was the plan's claim administrator because it had assumed the administration of the plan from its former administrator, Jefferson-Pilot Life Insurance Company ("Jefferson-Pilot"), and therefore had the authority to review claims and notify decisions.  Def. St. ¶ 5; Def. Opp. ¶¶ 44-46.   I therefore must address whether Triple-S had authority to make long term disability determinations.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

3

Initially, the plan policy (Docket No. 47 Appendix "App." 1-24) does not contain language that explicitly named Triple-S as claims administrator and insurer.  Jefferson-Pilot had originally issued to Mova a group policy (the "plan") which named Mova as the plan sponsor and administrator.  App. 2-4, 15.  "The Plan Sponsor is granted the discretionary authority to determine eligibility for benefits and to construe the terms of the Plan." App. 15.  As such, Mova could terminate the plan and a beneficiary's coverage at any time.  App. 6.  Jefferson-Pilot would pay the benefits for total or partial disability.  App. 11-13.  Nine years later, Triple-S notified Mova that it would pay the benefits provided under that group policy number, subject to all the policy's provisions.  Def. St. ¶¶ 4-5; Pl. Opp. ¶ 4; App. 1.  So far, Rodríguez's assertion that Mova, and not Triple-S, had the authority to determine benefits eligibility appears to be true.

However, Triple-S claims that at some point it substituted Jefferson-Pilot in the contractual relationship it held with Mova.  A review of the group policy and other stipulated documents yields insight as to Triple-S's claim.  *See Gross*, 734 F.3d at 13-14 (*quoting Brigham v. Sun Life of Canada*, 317 F.3d 72, 81 (1st Cir. 2003)) ("There are no required 'magic words,' however, to confer discretion, and 'language that falls short of th[e] ideal' can suffice.")  The forms to claim benefits and proof of loss of time for a disability were to be submitted to Jefferson-Pilot.  Jefferson-Pilot had the right, at its own expense, to examine the claimant, when and as often as was reasonably required while the claim was pending.  Jefferson-Pilot then submitted written proof authorizing the payment of benefits.  App. 14.  If the claim was wholly or partially denied, Jefferson-Pilot would furnish a written notice stating the specific reasons for the denial, with basis in the plan provisions, and an explanation of the plan's claim review procedures, along with a description of any additional material or information needed to reconsider the decision.  Also, an officer designated by Jefferson-Pilot would review requests for review

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

4

of a claim, and Jefferson-Pilot would furnish a written decision.  App. 15.  After Triple-S
notified Mova that it would pay the benefits, subsequent amendments to the group LTD
insurance master policy were approved and signed by Triple-S.  App. 20-24.  These
provisions appear to grant Jefferson-Pilot (and therefore Triple-S) discretionary authority
to review disability claims.

I also reviewed the administrative documents filed in the claim, and there are
plenty of instances in which Rodríguez dealt with Triple-S, and not Mova, in the
processing of her claim for LTD eligibility determination.  Triple-S received Rodríguez's
initial claim, request for reconsideration, and appeal.  There is evidence that Rodríguez
authorized Triple-S to obtain any information pertaining to her medical conditions and
work status to determine her eligibility for disability income benefits, and Triple-S
notified her that it may request information from her as part of the investigative process
of the claim they received under the plan, including the status of her Social Security
Administration ("SSA") benefits claim.  Rodríguez and her treating physician, Dr. Héctor
Cases, submitted assessments and questionnaires in Triple-S forms.  Triple-S referred the
case to independent examiners for review of the case file.  Rodríguez also authorized
Triple-S to make electronic claims payments to her bank account once LTD benefits were
approved.  App. 43-46, 66, 70, 87, 97-98, 167, 213, 290-297, 308-311, 371-376, 401-408;
App. Supp. 178-183.

 In addition, Rodríguez's appointed representatives for her SSA claim updated
Triple-S as to the status of that claim, assisted in obtaining medical records required by
Triple-S for this claim, and were notified of eligibility determinations.  App. 108-112,
121, 166, 338-339, 345-346.

Upon review of the group policy, administrative documents, and related
correspondence between Rodríguez, her treating physician, her legal representatives, and
Triple-S, it is clear that Triple-S had discretionary authority to determine benefits

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

5

eligibility.  Under 29 U.S.C. § 1002(21)(A)(iii),[2] although Mova was designated as plan administrator of the employee benefit plan, Triple-S was plan fiduciary with administrative authority to interpret the terms of the plan and determine eligibility for and entitlement to plan benefits.  Therefore, my review of Triple-S's LTD benefits denial must be deferential, and I can only overturn the termination decision if it was arbitrary and capricious, or an abuse of discretion, based on a review of the record as a whole. *Cook v. Liberty Life Assur. Co.*, 320 F.3d 11, 18-19 (1st Cir. 2003).

## BACKGROUND

The factual record is summarized here under Local Rule 56.[3]  Rodríguez and Triple-S each filed a statement of uncontested facts, and respective oppositions.  Docket No. 47, "Def. St."; Docket No. 49, "Pl. St."; Docket No. 59, "Def. Opp."; Docket No. 61, "Pl. Opp."; Docket No. 63, "Def. Reply to Opp.".  A stipulated copy of the administrative file was also provided, and both parties make reference to it in their respective motions for summary judgment and statements of uncontested facts.  Docket Nos. 47-1 to 47-28 and 52-1, Appendix "App." and "App. Supp."; *see* Docket Nos. 43, 50.

For purposes of these motions for summary judgment, the court takes the following facts as true:[4]

---

[2] "[A] person is a fiduciary to a plan to the extent … (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A)(iii).

[3] Local Rule 56 requires parties at summary judgment to supply and rebut brief numbered statements of fact, pinpoint-citing admissible record evidence.  It "relieve[s] the district court of any responsibility to ferret through the record" in search of genuine factual disputes, *CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from making the court do their homework for them.  *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007).  Failing to properly oppose a statement of fact allows the court to deem it uncontested.  *Id.*

[4] This background portion does not include facts regarding Rodríguez's mental health, which, as discussed further on, is not an issue for review here.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

6

***Group Long Term Disability Insurance Plan***

Rodríguez was a participant in a Group Long Term Disability Insurance Policy (the "plan") through her employer and policyholder, Mova.  Jefferson-Pilot issued to Mova Group Policy number 45,409, effective January 1, 1990. "The Group Policy is a contract between the Policyholder and Jefferson-Pilot."  App. 2-4.  Mova, the policyholder, was named as the plan sponsor and administrator.  App. 15.  The plan's administrator had complete discretionary authority to construe the terms to make benefits determinations, review claims, determine and notify eligibility for benefits, review decisions on administrative appeal, pay benefits, and be served with summons in case a judicial claim is filed.  Def. St. ¶¶ 1-5; Def. Opp. ¶ ¶ 44-47; App. 1-24. Jefferson-Pilot would pay the benefits for total or partial disability.  App. 11-13.  On January 1, 1999, Triple-S notified Mova that it would pay the benefits provided under that group policy number, subject to all the policy's provisions.  Def. St. ¶¶ 4-5; Pl. Opp. ¶ 4; App. 1.

The plan offered LTD benefits due to total disability.  To qualify for these benefits, the beneficiary had to comply with the definition of "total disability" or "totally disabled" and be under a doctor's care during the entire time of the total disability. "'Total disability' … means … that you are unable to perform all of the material and substantial duties of your occupation on a full-time basis because of disability: (1) caused by injury or sickness; and (2) that started while you are insured."  Pl. St. ¶ 3;  Def. St. ¶ 6; App 10.  A beneficiary is "totally disabled" if she is "unable to perform with reasonable continuity all of the material and substantial duties of [her] own or any other occupation for which [she is] or become[s] reasonably fitted by training, education, experience, age and physical and mental capacity."  App 10.  Benefits would be paid when the

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

7

beneficiary was totally disabled for longer than the applicable Elimination Period[5] until whichever happened first: (1) the day the total disability ended, (2) death, or (3) the end of the maximum payment period. Def. St. ¶ 7. Whereas, for mental illness, the plan limited payment of benefits to 24 months. Def. St. ¶ 12; Pl. Opp. ¶ 12; App. 206-207, 268-269.

### Rodríguez's Disability and Initial Denial of LTD benefits

Rodríguez, a licensed chemist, worked as a senior chemist/quality control laboratory supervisor for Mova from 1995 to 2004. App. 56, 64-65, 71. Her job required her to stand 30% of time in an average 8-hour work day, sit 30% of the time, walk 30% of the time, lift 5% of the time, and carry 5% of the time, and to have at least a low degree of dexterity. She had to bend continuously and reach occasionally, but she rarely had to lift, squat, climb, kneel, or perform repetitive tasks. She was required to lift about one pound on an infrequent basis. The use of her feet to operate foot controls was not required. The job could be performed by alternating sitting and standing. She had to frequently read and write, and signing her name was considered a repetitive task. App. 60, 83, 85.

Rodríguez was diagnosed with fibromyalgia, peripheral neuropathy, radiculopathy, hypothyroidism, Hashimoto's thyroiditis, osteoarthritis, rheumatoid arthritis, chronic cervical strain, chronic lumbosacral strain, and severe recurrent major depression with psychosis. Her symptoms included recurrent multiple joint and muscular pains that were at times severe, visual hallucinations, recurrent suicidal thoughts, and some self-inflicted aggressions. She was prescribed medications to mitigate the pain. Pl.

---

[5] The "Elimination Period" is 180 continuous days of total disability, beginning on the first day of disability. The plan did not pay benefits during that period. Pl. St. ¶ 3; Def. St. ¶¶ 6-9; App. 10, 20, 22.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

8

St. ¶¶ 27-31; Def. St. ¶ 16; App. 170, 174-176, 241, 244, 503, 507, 512, 515, 519-520, 532-536.

Rodríguez's first symptoms appeared on March 12, 2004, which was also her last day of work. These included pain in her lower back, cervical area, neck, ankle, arms, face, and feet, and inflammation in her right ankle, along with anxiety and depression. Def. St. ¶ 10; App. 27-33, 43-46, 51-56, 64-65, 68, 71; App. Supp. 29.

A lower extremity nerve conduction study, dated March 24, 2004, showed right peroneal motor neuropathy, right peroneal sensory neuropathy, and bilateral tibial motor neuropathy. An electromyography study conducted that same day showed normal results. App. 515, App. Supp. 241. A lumbar area MRI performed on April 5, 2004, revealed degenerative L5 vertebra changes in the vertebral disc and disc height loss. App. 512.

She began treatment with Dr. Héctor J. Cases ("Dr. Cases"), neurologist, on June 21, 2004. A nerve conduction study of her hands, performed on August 17, showed no evidence of median neuropathy or cervical radiculopathy, and although there was some evidence of decreased mobility, the severity was unclear. App. 162-163, App. Supp. 166. Dr. Cases filled out a Triple-S "Functional Capacity Estimate" form on November 29. He understood that her conditions were a result of her employment, and assessed that she could sit and stand for two hours during an 8-hour work day, walk for one hour, and alternate between walking, standing, and sitting for one hour, all with rest periods. She could occasionally lift and carry up to ten pounds. She could occasionally climb stairs and reach over her shoulders, but never bend at the waist, squat, or crawl. She could perform a simple grip and fine manipulation with either hand, but not pull or push. She could perform repetitive movements with both feet. He found that she faced no restrictions in activities that involved abrupt changes in temperature and humidity or exposure to dust, smoke, and gases. She had moderate restrictions in activities that involved unprotected heights and driving automobile equipment, and total restriction in

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

9

being near machines in movement.  Dr. Cases opined that Rodríguez could not work, full-time or part-time, even if her employer accommodated her limitations and restrictions. Pl. St. ¶ 19; App. 70, 87-88.

Triple-S received Rodríguez's application for LTD benefits on January 13, 2005.[6] She claimed feeling numbness, "an intrusive pain" (App. 52) throughout her entire body, and being unable to walk, lie down, sit, or stand for very long.  She stated not anticipating working in the near future, either in her previous occupation or in any other occupation, and was not interested in getting training or in working in another type of occupation or work activity.  App. 27-33, 43-46, 51-56, 64-65, 68, 71.

Rodríguez's claim was denied on April 14, 2005.  The notice stated that she did not meet the definition of total disability under the plan.  Specifically, it advised that Dr. Cases's file was short in content and essentially illegible, and that her test results for a lower nerve conduction velocity test, an electromyography, and a lumbar area MRI were considered, but that these results alone did not show her level of physical functionality, or the severity of her conditions, or how these affected her daily life and activities, and, most importantly, her ability to perform her occupation.  App. 158-164.

***Rodríguez's Request for Review and Triple-S's Approval of LTD Benefits on Administrative Appeal***

Rodríguez requested review of the initial denial on June 30, 2005, and added that she was being treated by Dr. Rodolfo Concepción ("Dr. Concepción"), a rheumatologist. She provided new evidence, a neurological evaluation by Dr. Cases, dated May 25, a letter from Dr. Concepción, dated June 22, and whole body bone scan results obtained upon referral by Dr. Concepción.  App. 167, 193.

_____

[6] The claim form appears signed and dated on December 9, 2004.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

10

Dr. Cases's neurological evaluation stated that Rodríguez had moderate cervical and paravertebral lumbosacral muscle spasms, but no tenderness or deformities were present in her neck or back. She portrayed a decreased range of motion in her neck. She was able to sit, stand, and walk, but had difficulty lying down and getting up from the exam table. Bending, straining, prolonged sitting, standing, and walking worsened her pain, and she required frequent positional changes. As to her motor functions, she showed no atrophy or fasciculation, had good tone and strength, and tested 5/5 bilaterally in a muscles test he conducted. She showed decreased sensation in both feet, but had good dexterity and normal range of motion in her extremities. No pathological reflexes, tenderness, deformities, atrophy or fasciculation were present. He added that he considered her disabled and unable to work, and recommended that she avoid all types of moderate or strenuous activities. Pl. St. ¶ 19; App. 168-170, App. Supp. 166.

Dr. Concepción informed on June 22 that Rodríguez complained of severe generalized pain and limited joint movement. App. 174-175. The whole body bone scan, with flow and emphasis on the joints, revealed a likelihood of degenerative joint disease, calcification in the costochondral junctions bilaterally, and periodontal disease. Pl. St. ¶ 17; App. 176, App. Supp. 166.

On October 10, 2005, Triple-S awarded Rodriguez on administrative appeal LTD benefits due to disability caused by her mental illness, effective September 24, 2004, limited to a term of 24 months as per the plan. She was not awarded LTD benefits for her physical ailments, but was notified that her physical condition would be further investigated. Def. St. ¶¶ 11-12; App. 206-208. Benefits for mental illness would expire September 24, 2006.[7] App. 405.

---

[7] A letter dated January 3, 2007 informed Rodríguez that benefits expired September 16, 2006. App. 238, Supp. App. 167.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

11

*Triple-S's Review of Rodríguez's LTD Benefits*

From 2007 to 2012, Rodríguez was notified on various occasions that her claim for LTD benefits for physical disability was being evaluated, as the plan's 24-month fixed term for mental illness had expired.  During this time period, Triple-S continued issuing the same monthly disability payments Rodríguez had been receiving for mental disability.  In 2009, she was also requested to submit evidence of her SSA claim.  On December 16, 2009, the SSA found Rodríguez to be disabled, retroactive to March 12, 2004.  Since SSA benefits were to be deducted from the amount payable for disability under the plan, Triple-S requested a refund of all excess LTD benefits.   Def. St. ¶ 13; Def. Opp. ¶¶ 49-50; App. 235-240, 260-262, 268-283, 298, 321-328, 331, 335-339, 342, 345-367, 384-394, 405, 539-541, 546-550, 560-572; App. Supp. 167, 182, 267-269.

Among the updated copies of treating physicians' progress notes and other paperwork sent for review was Dr. Concepción's assessment that Rodríguez was unable to perform a gainful job, and Dr. Dilia Díaz-García's, endocrinologist, report that Rodríguez's disability was permanent and total.  Pl. St. ¶¶ 12-16; App. 242-244.

On February 14, 2008, a radiology exam revealed straightening of the cervical lordosis and spondylosis.  App. 502.  On February 18, a whole body bone scan revealed findings in her joints that were compatible with arthritic changes, but no evidence of active inflammatory process in the lumbar vertebrae, pelvis or hips ( App. 503), and a dual-energy densitometry revealed a normal lumbar spine, and left hip and left forearm bone density without evidence of osteoporosis or osteopenia.  App. 519, App. Supp. 245.

Dr. Cases filled out another Triple-S "Functional Capacity Estimate" form on February 9, 2009, which stated that Rodríguez could sit, stand, and walk for up to two hours each in an 8-hour work day, with periods of rest.  She could occasionally lift and carry up to ten pounds and reach over her shoulders.  She could not bend at the waist, squat, crawl, or climb stairs.  She could use both hands in repetitive movements for

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

simple gripping and fine manipulation, but not to pull or push.  She could not use either foot for repetitive movements such as operations requiring foot controls.  She had no visual limitations or travel restrictions.   Dr. Cases assessed that Rodríguez was not able to work full-time or part-time.  App. 290-291, 304-305; App. Supp. 166.  He certified on December 14 that Rodríguez was completely disabled.  Pl. St. ¶ 19; App. 263, 536.

Dr. Cases submitted another functional capacity estimate on January 18, 2013.  Pl. St. ¶ 8; App. 382-383, 531; App. Supp. 258, 260.  According to Dr. Cases, Rodríguez could sit and stand for two hours with periods of rest during an 8-hour workday; walk no more than one hour with periods of rest; alternate between walking, sitting, and standing for one hour with periods of rest; occasionally lift and carry up to 20 pounds; occasionally climb stairs, crawl,[8] reach above shoulder level, and use her hands for simple gripping and fine manipulation.  She could not push or pull using a repetitive movement, bend her waist, or use her feet to complete repetitive movements.   She had no restrictions performing activities in unprotected heights or with exposure to dust, smoke, and gases.  She had slight restrictions for working in environments with abrupt changes in temperature and humidity and that required driving a vehicle.  She had total restrictions in working around machinery in movement.[9]  He opined that she could not work full-time.  Pl. St. ¶¶ 8, 20-25; Def. Opp. ¶¶ 8, 20, 25; App. 382-383, 531; App. Supp. 166-167.   On January 28, Dr. Cases added that Rodríguez had reached the maximum medical improvement, and that she was not fit to return to work, in spite of any work accommodations available for her limitations and restrictions.  Pl. St. ¶ 10; App. 381, 534; App. Supp. 261.

Rodríguez filled out and submitted various Triple-S resource questionnaires, the last one being January 23, 2013, in which she claimed being unable to work because her

---

[8] Dr. Cases check-marked that she could both never and occasionally crawl.
[9] The check-marks in the translation for the portion of activity restrictions are not the same as in the original.  App. 382.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

13

conditions were permanent.  She felt pain throughout her body that came and went, and there were days when she could not move.  Sometimes she couldn't walk because of her neuropathy, but other times she could walk for 10-15 minutes.  She needed help getting dressed because her shoulders/back/ankles hurt.  She could drive about a mile from her house, and go shopping and to medical appointments.  She could also regularly cook, clean (sweep), do laundry (but not bend to remove items from the washer), and water her plants.  She did not anticipate working in the near future, either in her previous occupation or in any other occupation, due to her conditions, and was not interested in getting training or in working in another type of occupation or work activity. App. 294-297, 308-311, 373-376; Supp. App. 166-167.

Triple-S referred the case to Dr. Alfonso Bello ("Dr. Bello"), a rheumatologist, for an Independent Medical Review of Rodríguez's medical file, which he completed on April 13, 2013.  The medical file provided contained evidence that dates from March 24, 2004 to March 8, 2013, including the assessments by Dr. Cases[10] and Dr. Concepción. Dr. Bello noted that the clinical data contained in the physician's progress notes did not demonstrate an active rheumatologic disorder with movement limitations or other findings that were not subjective pain.  Dr. Bello concluded that, from a rheumatologic perspective, Rodríguez's medical record did not support a finding that she suffered from an active and disabling disorder, and, hence, she was not permanently disabled.  In sum, Dr. Bello believed that the medical record did not support a finding that she was permanently disabled since he found no reasonable physical limitations or restrictions. Pl. St. ¶¶ 33-40; Def. St. ¶¶ 14-15, 26; Def. Opp. ¶¶ 33, 36, 37; App. 395-400, 402, 404, 551-552; App. Supp. 298-303.

---

[10] Dr. Bello stated in his report that he was unable to contact Dr. Cases for a peer-to-peer discussion of Rodríguez's conditions and their impact on her functioning.  Dr. Bello claims he left several phone messages to Dr. Cases.  Dr. Cases denies having received messages by Dr. Bello.  App. 395, 404, 408-410, 551-552; App. Supp. 204-205, 278.

Triple-S also referred the case to a vocational specialist for an employability evaluation from a physical standpoint.  The vocational specialist found on May 6, 2013 that there were 162 sedentary and light duty occupations, including her previous job, available the San Juan, Caguas, and Guaynabo metropolitan area, that Rodríguez could perform given her education, training, and previous work experience, and that met or exceeded her reasonable wage of $12.62 per hour.  Some of these jobs are similar to the work she performed in her previous job at Mova, including technical and supervisory duties in laboratories.  Pl. St. ¶¶ 41-43; Def. St. ¶ 18; Docket No. 47-11, App. 405; App. Supp. 168, 182, 285, 294-297.

***Triple-S's Denial of LTD Benefits***

On July 23, 2013, Triple-S denied Rodríguez's application for LTD benefits, finding she no longer met the plan's definition of disability.  Her administrative record did not contain enough clinical evidence to support a finding that she was unable to physically perform the tasks of her previous job or any other occupation.  Triple-S also terminated her mental illness disability benefits, as the benefits had been paid beyond the 24-month limit allowed by the plan, and did not request reimbursement for the excess benefits paid.  Pl. St. ¶¶ 1-2, 4-6, 18, 32; Def. St. ¶ 19; App. 401-407.

On August 23, 2013, Rodríguez appealed Triple-S's decision and submitted new evidence, copies of her medical files,[11] and SSA documents.  Def. St. ¶¶ 23-24; App. 411-557, App. Supp. 276-277.  Dr. Concepción ordered further tests. A radiology exam performed on September 10 revealed straightening of the lumbar lordosis and spondyloarthritic changes and degenerative disc disease at L5-S1 (App. 553), and a lumber MRI performed on September 16[12] showed slight lumbar degenerative disc disease, a straight column that suggests spasm of the paravertebral muscles, and

---

[11] A copy of Dr. Cases's progress notes, starting from July 21, 2004, was filed on August 26, 2013.  The hand-written notes are illegible.  App. 411-500, App. Supp. 215-235.

[12] The translation erroneously dates the study April 5, 2004.  App. 554, App. Supp. 207.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

deterioration of the lesion at the L5/S1 level when compared to the same study conducted

in 2004.  App. 554.

Triple-S referred the case to Dr. Inocencio A. Cuesta[13] ("Dr. Cuesta"), internist

with a sub-specialty in adult rheumatology, who performed an independent peer

review on October 11, 2013.  Dr. Cuesta concluded that, although the record sustained

subjective evidence of pain, and a bone scan showed evidence of osteoarthritis, there was

no objective evidence of joint inflammation or decreased range of motion in her joints.

An MRI showed L5/S1 herniation and fragment post left intervertebral foramina, but he

found no information that indicated this finding impaired Rodríguez.  He noted that her

musculoskeletal complaints worsened when her depression worsened, and that the record

contained no clinical information as to how her physical ailments affected her ability to

return to work.  Dr. Cuesta concluded that Rodríguez did not suffer from a physical

deterioration based on a rheumatoid condition that would prevent her from working full-

time in a light or sedentary occupation.  Dr. Cuesta unsuccessfully tried to contact Dr.

Cases for a peer-to-peer discussion of the medical record and his findings.  Def. St. ¶¶

25, 30; App. Supp. 181-182, 194-196.

Another employability evaluation was conducted, taking into account only her

physical condition.  The occupational specialist concluded that there were jobs that

Rodríguez could perform given her education and experience that might not require

additional training, modification, or restructuring, and that would meet or exceed her

reasonable wage of $12.62 per hour.  Def. St. ¶¶ 31-37; App. 206, App. Supp. 295-297.

On December 3, 2013, Triple-S notified Rodríguez that it was denying benefits

because the medical record did not support a finding that she suffered from a physical

---

[13] Triple-S's notice of denial and other administrative documents and e-mails sometimes
refer to the referral doctor as Dr. Inocencio Cuevas, but the correct name appears in an addendum
prepared and signed by the referral doctor.  App. Supp. 194-196, 201.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)
16

condition that prevented her from performing light or sedentary occupations, and that disability benefits under the mental illness provision of the LTD plan had already been exhausted, even if she continued to be disabled due to a mental health condition.  She was also advised of her right to sue under § 502(a) of ERISA since she had already exhausted the administrative remedies.  Def. St. ¶¶ 38-41; App. Supp. 178-183.

Having exhausted administrative remedies, Rodríguez filed this suit, which was removed from state court.

## DISCUSSION

"'Where … the administrator of an ERISA plan is imbued with discretion in the interpretation and application of plan provisions, its use of that discretion must be accorded deference.'"  *Dutkewych v. Standard Insurance Company*, 781 F.3d 623, 633 (1st Cir. 2015) (*quoting Colby v. Union Sec. Ins. Co.*, 705 F.3d 58, 61 (1st Cir. 2013)).  A reviewing court must uphold an ERISA plan administrator's decision unless it is "'arbitrary, capricious, or an abuse of discretion.'"  *Dutkewych*, 781 F.3d at 633 (*quoting Ortega-Candelaria v. Johnson & Johnson*, 755 F.3d 13, 20 (1st Cir. 2014)).  Under this standard of review, a plan administrator's determinations must be reasonable and supported by substantial evidence.  *Dutkewych*, 781 F.3d at 633 (*quoting Colby*, 705 F.3d at 62).  Substantial evidence means evidence reasonably sufficient to support a plan administrator's decision, and "so long as substantial evidence supports the plan administrator's decision, the decision is not rendered unreasonable by the mere existence of evidence to the contrary."  *Ortega-Candelaria*, 755 F.3d at 20 (*quoting Cusson v. Liberty Life Assur. Co.*, 592 F.3d 215, 230 (1st Cir. 2010)).

Rodríguez claims that Triple-S capriciously and arbitrarily determined that she was ineligible for LTD benefits due to her physical limitations, and that Triple-S did not consider evidence she submitted to them as part of the administrative record.  Rodríguez is not claiming that Triple-S denied benefits based on a finding that she was not mentally

disabled.  Triple-S indeed affirms that she was correctly granted benefits for an existing

mental disability.   Rodríguez had been assessed with moderate to severe psychiatric

functional capacity.   App. Supp. 165.   Under the terms of the plan, payment of LTD

benefits is limited to a maximum payment period of 24 months during her entire lifetime

for a disability caused by a mental disorder.  App. Supp. 180.  Since Rodríguez received

the benefits for mental health disability for the time period allotted by the plan, and then

some, I find that Triple-S's decision to terminate benefits for mental disorder past the 24-

month period was not arbitrary or capricious, and Rodríguez exhausted her right to plan

benefits for mental limitations.

      In order to be covered for LTD benefits under the plan, Rodríguez had to comply

with the plan's unambiguous definition of "total disability" and be under a doctor's care

during the entire time of the total disability.[14]  That is, she had to be unable to perform all

of the material and substantial duties of her occupation or any other occupation for which

she was reasonably fit to do by training, education, experience, age, and physical and

mental capacity on a full-time basis because of disability caused by injury or sickness and

that started while she was insured.  App. 11.  I must thus look at the physical demands of

her job, and whether the record supports Triple-S's finding that she was able to perform

that occupation or similar ones.

      Rodríguez's job as a quality supervisor for Mova required her to stand 30% of

time in an average 8-hour work day, sit 30% of the time, and walk 30% of the time.  The

job could be performed by alternating sitting and standing.  She had to bend continuously

and reach occasionally, but she rarely had to squat, climb, or kneel.    She was not

required to operate foot controls.  She also had to lift 5% of the time, carry 5% of the

time, and have at least a low degree of dexterity.  She was required to lift about one

---

[14] The administrative file reflects that Rodríguez was receiving medical treatment for her physical conditions during the time period that Triple-S was determining her eligibility for continued LTD benefits under the plan, and before.  App. 373, 402.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

pound on an infrequent basis. She had to frequently read and write, and the only required

repetitive task was signing her name. App. 60, 83, 85, 376, 402. The vocational

specialist considered her functional abilities, as reported by Dr. Bello,[15] work history,

training, and education, and identified 162 sedentary and light occupations for which she

had the skills to perform, according to her physical abilities, including her previous job.

App. 405, App. Supp. 294-297. I could not find in the stipulated record a definition of

what constituted light or sedentary work. If her job was included in the list of

occupations that the specialist identified, I would have to assume that her previous job

was sedentary and/or light, and that the above description fits the physical requirements

that Triple-S found her capable of performing.

  In reviewing the sources that Triple-S used to deny benefits throughout the

administrative proceedings, which included Rodríguez's own statements (resource

questionnaires), functional capacity assessments, progress notes, and test results from her

treating physicians, Dr. Cases and Dr. Concepción, and particularly the independent

functional capacity assessments by Dr. Bello and Dr. Cuesta, there exists substantial

evidence that Rodríguez was able to perform the physical requirements mentioned above.

  Rodríguez relies heavily on Dr. Cases's opinion in claiming that she is unable to

work, and argues that Triple-S did not consider Dr. Cases's assessment. Pl. Mot. ¶¶ 30-

36. Dr. Cases, who opined that Rodríguez could not work full-time, in spite of any work

accommodations that an employer could make available, rendered three functional

capacity estimates (2004, 2009, and 2013) which were basically the same, slightly

different in that in 2013 her ability to walk was further restricted to one hour with rest

---

[15] Rodríguez argues that the vocational specialist did not consider her conditions when
drafting the employability evaluation, but the specialist used Dr. Bello's assessment that
Rodríguez did not have physical restrictions to conduct the evaluation. Pl. Mot. p. 13; App. Supp.
295.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

19

periods instead of two hours during an 8-hour workday.  Rodríguez could sit and stand

for two hours each, also with periods of rest.  She had to alternate between walking,

sitting, and standing.  Dr. Cases's assessment is a bit more restrictive than the required

30% walking/standing/sitting ratio required by the previous job, but the job did allow

alternating between them.  Dr. Cases also assessed that Rodríguez could occasionally lift

and carry up to 20 pounds, and climb stairs, which the job did not require, and

occasionally reach above shoulder level, which the job did require. The job also required

writing and signing her name, and Dr. Cases assessed that Rodríguez could use her hands

for simple gripping and fine manipulation.  She could not push or pull using a repetitive

movement, or use her feet to complete repetitive movements, which the job did not

require, and could not bend her waist, which the job required she perform continuously.

Pl. St. ¶¶ 8, 10, 20-25; Def. Opp. ¶¶ 8, 20, 25; App. 381-383, 531, 534; App. Supp. 166-

167, 261.

Dr. Concepción, who treated her from 2005 to 2009, found limited shoulder range

of motion on examination.  App. 398.  This assessment does not shed light as to how that

impeded her from performing physical tasks such as lifting or reaching.

In her last resource questionnaire, dated February 5, 2013, Rodríguez reported

being able to sometimes walk between fifteen to twenty minutes at a time, and being able

to perform activities of daily living, such as cooking, cleaning (sweep/mop), washing

clothes, and gardening.  She could also drive and use her computer.  Rodríguez added

that she had good days and bad days, and got by with her pain.  App. 373-376, 397, 404.

This is compatible with a person who can alternatively stand, walk, and sit, and use her

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

20

hands for simple gripping and fine manipulation.  Her ability to sometimes perform those activities of daily living could also imply some ability to lift, reach, and bend.

Both independent assessments concluded that the record did not support Rodríguez's claim that she was unable to work.  Dr. Bello believed that the medical record did not support a finding that Rodríguez was permanently disabled since he found no reasonable physical limitations or restrictions, and that the medical progress notes did not demonstrate an active rheumatologic disorder with movement limitations, strength or other findings that were not subjective pain.[16]  App. 395, 404.  Dr. Cuesta concluded that, although the record sustained subjective evidence of pain, there was no objective evidence of joint inflammation or decreased range of motion in her joints.  He noted that her musculoskeletal complaints worsened when her depression worsened, and that the record contained no clinical information as to how her physical ailments affected her ability to return to work.  Dr. Cuesta concluded that Rodríguez did not suffer from a physical deterioration based on a rheumatoid condition that would prevent her from working full-time in a light or sedentary occupation.  Def. St. ¶ 25, 30; Supp. App. 181-182; 194-196.

The independent assessments by Dr. Bello and Dr. Cuesta and the final determination contained a thorough review of Rodríguez's medical files.  Contrary to Rodríguez's claim that Dr. Cases's assessment was not considered, it is clear that the

---

[16] Rodríguez claims that Dr. Bello did not examine her and that he did not consider the 2013 medical evidence she submitted.  Triple-S replied that Dr. Bello was not obligated to do so, and that she did not specify which medical evidence she claims Dr. Bello did not consider, plus that she filed medical information after Dr. Bello filed his report, but that this information was evaluated and considered by Triple-S.  Pl. St. ¶¶ 33-40; Def. St. ¶¶ 14-15, 26; Def. Opp. ¶¶ 33, 36, 37; App. 395-400, 402, 404, 551-552.

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

21

opinions of the treating physicians and test results in file were considered.  The medical

record, which included functionality assessments, progress notes, and test results, was

abundant and contained extensive evidence of physical conditions that were painful and

limiting as per Rodríguez's own testimony via questionnaires and her treating physicians'

medical records, and is so reflected in the final determination.   However, there is

conflicting evidence between the assessments of the treating and non-treating physicians

as to the extent her conditions limited her physical performance.   "Although a plan

administrator 'may not arbitrarily refuse to credit a claimant's reliable evidence,

including the opinions of a treating physician,' we do not require administrators to

automatically grant 'special weight' to the opinion of a claimant's chosen provider."

*Ortega-Candelaria*, 755 F.3d at 20 (*quoting Black & Decker Disability Plan v. Nord*, 538

U.S. 822, 834 (2003)).  More so, "'[a] plan administrator is not obligated to accept or

even to give particular weight to the opinion of a claimant's treating physician.'"  *Medina*

*v. Metro. Life Ins. Co.*, 588 F.3d 41, 46 (1st Cir. 2009) (*quoting Morales-Alejandro v.*

*Med. Card Sys., Inc.*, 486 F.3d 693, 700 (1st Cir. 2007)).  "Consequently, in the presence

of conflicting evidence, it is entirely appropriate for a reviewing court to uphold the

decision of the entity entitled to exercise its discretion."  *Ortega-Candelaria*, 755 F.3d at

20-21 (internal quotations and citations omitted).  Giving Triple-S the due deference to its

final determination, and not finding any evidence that it acted in an arbitrary or

capricious manner in reviewing Rodríguez's claim, or in abuse of its discretion,  I find

that there is substantial evidence to support Triple-S's decision to deny LTD benefits.

Finally, Rodríguez claims that evidence that the SSA awarded her benefits

corroborates her inability to work.  App. 331-334, 367-369.  Triple-S argues that it did

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

not consider the SSA's determination in determining total disability, and only requested

this information in determining the amount of benefits payable during total disability

because SSA benefits are deducted from the amount payable under the plan.  Def. Opp.

¶¶ 49-50.

Triple-S's notice of denial of benefits correctly informed Rodríguez that, although

the SSA approved benefits because they found her to be disabled, Triple-S's decision was

not contingent on the SSA's decision, as its determination was based on the medical

evidence available to them along with the provisions of the LTD policy, and not on the

SSA's criteria to determine eligibility.  App. Supp. 181.  Although a SSA determination

may provide relevant evidence, a plan is not required to accept a SSA adjudication of

disability as binding where the definitions of disability differ.  *Scibelli v. Prudential Ins.*

*Co. of Am.*, 666 F.3d 32, 42 (1st Cir. 2012).  "The calculus of decision in social security

cases differs significantly from that employed in ERISA cases."  *Leahy*, 315 F.3d at 20.

Where the SSA has a specific framework for determining disability, no comparable or

specially promulgated set of criteria exists in ERISA cases.  *Id.*  "The fiduciary's decision

is constrained only by the language of the particular plan at issue and by a judge-made

adjudicative standard."  *Id.*  "Consequently, although a related Social Security benefits

decision might be relevant to an insurer's eligibility determination, it should not be given

controlling weight except perhaps in the rare case in which the statutory criteria are

identical to the criteria set forth in the insurance plan."  *Pari-Fasano v. ITT Hartford Life*

*& Accident Ins. Co.*, 230 F.3d 415, 420 (1st Cir. 2000).  The SSA made a favorable

decision in Rodríguez's case, finding that both her back and affective disorders were so

severe that they met the requirements of one of the impairments found in their Listing of

Nilda Rodríguez-López v. Triple-S Vida, Inc.
Civil No. 14-1498 (BJM)

Impairments.  App. Supp. 267.  Triple-S was not considering her affective disorder, only her physical conditions, as per plan policy.  It is evident that the criteria used to determine disability are not the same, and a finding of disability based on a combination of physical and mental impairment may not be relevant to Triple-S's determination of LTD eligibility for physical impairment alone.

In sum, I find that the plan vested Triple-S with discretionary authority to determine eligibility for LTD benefits, and the medical evidence supports Triple-S's denial of benefits.  I therefore find that Triple-S's decision to deny Rodríguez LTD benefits for physical illness was neither arbitrary nor capricious.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2015.


_S/ Bruce J. McGiverin_
BRUCE J. McGIVERIN
United States Magistrate Judge